IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BESSIE E. LAWSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:12-cv-719-MEF |
| v. ) | (WO – Do Not Publish) |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Plaintiff Bessie Lawson ("Ms. Lawson") brings this action against the United States of America ("Defendant") to recover for injuries she suffered when she slipped and fell in the entranceway of the United States Post Office in Enterprise, Alabama. Now pending before the Court is Defendant's Motion for Summary Judgment. (Doc. #20.) After considering the parties' submissions and supporting evidence, the Court concludes that Defendant's motion is due to be GRANTED.

**II. JURISDICTION AND VENUE**

This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to the Federal Tort Claims Act (the "FTCA"), 28 U.S.C. § 1346(b)(1). The FTCA grants district courts original jurisdiction over civil suits against the United States as if it were a private person for, among other things, personal injuries caused by the negligent acts or omissions of government employees committed in the scope of their employment. 28 U.S.C. §

1346(b)(1). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

### III. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23. A factual dispute is genuine if the evidence would allow a reasonable jury to find in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once the moving party has met its burden, Rule 56(c) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A court ruling on a motion for summary judgment must believe the evidence of the non-moving party and must draw all justifiable inferences from the evidence in that party's favor. *Anderson*, 477 U.S. at 255. However, if the evidence on which the non-moving party relies "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 242 (citations omitted). "Speculation does not create a *genuine* issue of fact . . . ." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). Likewise, "[a] mere scintilla of evidence in support of the non-moving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## IV. FACTS

The Court has carefully considered all the evidence submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to Ms. Lawson, as the non-movant, establish the following facts.

At around 7:00 a.m., on July 21, 2011, Mark Nelson ("Mr. Nelson"), a laborer-custodian at the United States Post Office in Enterprise, Alabama, cleaned the floors of the customer entranceway—the area between the exterior doors of the post office and another set of doors leading to the post office lobby—and inspected it for hazards. He found none.

Sometime later that afternoon, Ms. Lawson visited the post office to pick up a registered letter that had been sent to her at her daughter's address. On her way into the post office, Ms. Lawson did not notice anything on the floor of the entranceway. When it was her

turn to be helped, the postal worker asked for her daughter's address to retrieve the registered letter, but Ms. Lawson could not remember it.  So Ms. Lawson immediately left the post office, got her daughter's address from her car, and then started on her way back into the post office.  Ms. Lawson did not notice anything on the floor of the entranceway when she exited the post office to retrieve her daughter's address from her car.

When Ms. Lawson returned from her car, she stepped over the threshold into the entranceway, pulled open the front door, and slipped and fell on her bottom and hip, landing with her left leg buckled under her and spraining her left knee.  While lying on the ground after her fall, Ms. Lawson noticed that the floor was "wet" and "had sand on it." (Deposition of Bessie Lawson ("Lawson Dep.") at 41:5–13, Doc. #20-1.)  Ms. Lawson testified that she guessed the substance was water because it was "wet," but stated that it could have been "water, pee, I don't know.  It was wet." (Lawson Dep. at 41:18–22.)  She further noted that, while the floor was wet, it was not "dripping wet[.]" (Lawson Dep. at 42:5–6.)  There is no evidence as to the color, size, or specific location of the substance on which Ms. Lawson claims to have fallen.  There is no evidence that Ms. Lawson's clothes were wet after her fall.  There was also no floor mat in the area of floor where Ms. Lawson fell.  (Lawson Dep. at 42:7–15.)

Sometime after Ms. Lawson's fall, Mr. Nelson was called to inspect the entranceway and the other customer service areas for hazards, but he did not find any liquid substances or other debris on the floor of either area.  While the record does not establish exactly how much time elapsed between the time of Ms. Lawson's fall and the time Mr. Nelson was

4

called to inspect the entranceway, it is undisputed that Mr. Nelson observed Ms. Lawson sitting in a meeting room as he walked to the site of her accident that day. Until the time of Ms. Lawson's fall, Mr. Nelson had not been notified on the day of the accident of any hazards in the entranceway or lobby. On days when it is not raining, Mr. Nelson routinely walks in and out of the lobby and inspects it for hazards. On rainy days, it is Mr. Nelson's practice to inspect the entranceway and lobby about every hour (or as needed) for accumulations of water, to mop up any puddles he sees, and to clean up any other debris that customers may have tracked in. No one, not even Ms. Lawson, can recall if it was raining on the day of Ms. Lawson's accident. (Lawson Dep. at 22:13–20; Declaration of Mark Nelson ("Nelson Decl.") at ¶ 2, Doc. #20-2.)

## V. DISCUSSION

Ms. Lawson alleges that Defendant was negligent in failing to clean up the hazardous substance she alleges was in the entranceway and for failing to warn customers about it. In its motion for summary judgment, Defendant argues that it is entitled to summary judgment because Ms. Lawson cannot present any evidence that it had notice of the hazard[1] or that it created the hazard, either of which impose a duty on Defendant to clean up the substance or to warn customers of its presence.

---

[1] With this argument, Defendant does not concede that the substance Ms. Lawson claims to have slipped on existed, nor does it concede that it was raining on the day in question or that there was an unusual accumulation of rainwater in the entranceway. (*See* Def.'s Reply at 7, Doc. #25.) Defendant's argument simply presumes that even if there had been a substance on the floor, it had no notice of the hazard and did not create the hazard, and therefore, it had no duty to clean it up or to warn customers of its presence.

### A.   Federal Tort Claims Act and Applicable Law

The United States, as sovereign, is generally immune from suit unless it waives its immunity. *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Monzon v. United States*, 253 F.3d 567, 570 (11th Cir. 2001). Under the FTCA, the United States has waived its sovereign immunity in actions by private parties for torts committed by employees acting on behalf of the United States. 28 U.S.C. § 1346(b)(1). That statute authorizes suits

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Claims brought under the FTCA are governed by the substantive law of the state where the alleged act or omission giving rise to liability occurred. 28 U.S.C. § 1346(b)(1). The alleged act or omission in this case occurred at the post office in Enterprise, Alabama. Thus, Alabama law applies.

### B.   Ms. Lawson's Negligence Claims

Under Alabama law, the elements of negligence in a premises liability case "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citations and quotations omitted). A store or business like the Enterprise post office is "under a duty to exercise reasonable care to provide and maintain a reasonably safe premises" for its

invitees—its customers.[2] *Maddox v. K-Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990); *see also Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala. 2003) ("The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition."). Moreover, if the premises is in a dangerous condition, and the business knew or should have known of the condition, the business owner has a duty "to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Banks. v. Bayou Bend II, Ltd.*, 552 So. 2d 1070, 1071 (Ala. 1989). But a store owner is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition. *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 101 (Ala. 2003). This is why mere proof of an accident or injury is not enough to establish negligence. *See Lowe's Home Centers, Inc. v. Laxson*, 655 So. 2d 943, 946 (Ala. 1994) ("No presumption of negligence arises from the mere fact of an injury to an invitee . . . .").

To establish a business's liability in a slip-and-fall case, a plaintiff must first prove that the defendant business had notice of the substance that caused the accident. *Maddox*, 565 So. 2d at 16. This can be done in one of three ways: (1) by showing that the business had actual notice that the substance was on the floor; (2) by showing that the substance had been on the floor so long that the store had constructive notice of it; or (3) by showing that the store was otherwise delinquent in failing to discover and remove the substance. *Id.* at 16; *Cox v. Western Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger*

---

[2] Defendant does not dispute that Ms. Lawson was an invitee of the post office when her fall occurred.

*Co.*, 521 So. 2d 934, 935–36 (Ala. 1988); *see also Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008). A store's delinquence can be shown where the store or one of its employees created the hazard, *Dunklin v. Winn-Dixie of Montgomery, Inc.*, 595 So. 2d 463, 464 (Ala. 1992), *Nelson v. Delchamps, Inc.*, 699 So. 2d 1259, 1261 (Ala. Civ. App. 1999), or where there is evidence that a business's inspection procedures are inadequate or were performed inadequately on the day of a plaintiff's fall. *Hale v. Kroger, Ltd. P'ship I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009).

Defendant argues summary judgment is appropriate because Ms. Lawson cannot produce any evidence that it had actual or constructive notice of a dangerous condition in the entranceway or that it was delinquent by either creating a hazard that proximately caused Ms. Lawson's fall or by employing inadequate inspection procedures.

### 1. *Actual Notice*

Although Ms. Lawson alleged in her complaint that Defendant had actual notice of the substance in the entranceway, there is no evidence, and Ms. Lawson did not argue, that any post office employee had actual notice of the substance's presence before her fall. Indeed, Ms. Lawson admittedly did not notify the post office of the substance, because she did not see it herself. Moreover, the post office custodian, Mr. Nelson, testified that he had not noticed any substances or other hazards on the floor of the entranceway when he cleaned it at the beginning of his workday, and there is no dispute that Mr. Nelson was not notified of any substance in the entranceway on the day of Ms. Lawson's fall until *after* she fell. Mr. Lawson further stated that he was not aware of any reports made to other post office

employees regarding hazards or substances in the entranceway or anywhere else in the post office on the day of Ms. Lawson's fall. (Nelson Decl. ¶ 3, Doc. #20-2.) Based on the foregoing, there is no evidence before the Court from which a reasonable juror could conclude that the post office had actual notice of the presence of the substance on which Ms. Lawson allegedly fell in the entranceway of the post office on the day of her fall.

### 2. *Constructive Notice*

Constructive notice may be proven with circumstantial evidence that the substance had been on the floor for a long enough period of time that the business should have been aware of it. *Cash v. Winn-Dixie of Montgomery, Inc.*, 418 So. 2d 874, 875 (Ala. 1982). A inference may be made as to the length of time a substance has been on the floor from "the nature and condition of the substance," but this inference must be a reasonable one. *Id.* at 876. For example, "[w]here the substance is dirty, crumpled, or mashed, or has some other characteristic that makes it reasonable to infer that it has been on the floor a long time, the business may be found to have had a duty to discover and remove it." *Maddox*, 565 So. 2d at 17. Conversely, courts have granted summary judgment where there was evidence that the substance on which the plaintiff slipped was "clear" and no substance had been observed in the area prior to the plaintiff's fall. *See Williams*, 584 F. Supp. 2d at 1319–20; *Rayburn v. Wal-Mart Stores, Inc.*, No. 3:08-cv-314-F, 2009 WL 2905600, at *4 (M.D. Ala. Sept. 4, 2009).

In *Maddox*, the Alabama Supreme Court reversed summary judgment and held that a jury could reasonably find that a store had constructive notice of a substance's existence

where there was testimony that the substance looked like a puddle of soda, was about two-feet wide, was "sticky," and "looked like it was trying to dry." 565 So. 2d at 16–17. However, district courts have been more cautious to infer constructive notice in the absence of evidence as specific as that presented in *Maddox*.

For example, in *Williams*, the district court found testimony that there was a puddle of clear water near the spot where the plaintiff fell was insufficient to create a triable issue of fact on constructive notice. *See* 584 F. Supp. 2d at 1319 (noting that testimony "that the water was muddied, or that the puddle was particularly large, or that footprints showed that others had already walked through the puddle before [the plaintiff]" would have suggested the substance had been on the floor longer than a moment). The evidence in *Williams* also established that the plaintiff's sister had exited the store shortly before the accident without noticing the puddle. *Id.* Likewise, in *Rayburn*, the district court granted summary judgment where the plaintiff and her husband testified that the puddle of water the plaintiff slipped on was clear and free of track marks, foot prints, or black marks. 2009 WL 2905600, at *4. The undisputed evidence in *Rayburn* established that neither the plaintiff nor her husband had noticed the puddle prior to the fall and that a store employee had walked by the area where plaintiff fell four or five minutes prior to the accident without noticing anything on the floor. *Id.*

In this case, the Court finds the evidence insufficient to create a genuine dispute of fact that Defendant had constructive notice of the substance in the post office entranceway on the day of Ms. Lawson's fall. The only evidence regarding the nature and condition of

the alleged liquid in this case is Ms. Lawson's vague testimony that it was "not dripping wet," and "had sand on it." (Lawson Dep. at 41:5–13, Doc. #20-1.) There is no evidence that the liquid was sticky, dark in color, muddy, particularly large, had footprints or other track marks in it, or that Ms. Lawson's clothes were dirty or wet following her fall. *Cf. Kenney v. Kroger*, 569 So. 2d 357, 359 (Ala. 1990) (finding genuine dispute of fact on defendant store's constructive notice where plaintiff was discovered lying in "pool" of Pine-Sol so large that it saturated plaintiff's clothes). There is also no testimony from Ms. Lawson as to how much sand was on the floor, where the substance was located, or the consistency of the substance.

Moreover, although the evidence suggests that Mr. Nelson had not inspected the entranceway since 7:00 a.m. on the day of Ms. Lawson's fall, it is undisputed that Ms. Lawson did not observe the substance on her two trips in and out of the post office prior to her fall. Nor had any other post office employees or patrons complained of a hazard or substance in the entranceway on the day of Ms. Lawson's fall. Considering this evidence collectively, the Court concludes that Ms. Lawson has failed to raise a triable dispute of fact that Defendant had constructive notice of the substance's presence in the post office entranceway on the day of her fall.

### 3.     *Otherwise Delinquent*

Proof of actual or constructive notice is dispensed of in cases in which the business or one of its employees creates the dangerous condition, *Dunklin*, 595 So. 2d at 464 (Ala. 1992), *Nelson*, 699 So. 2d at 1261, and cases in which the evidence indicates that the

11

business's inspection procedure was inadequate or performed inadequately on the day of the plaintiff's fall. *Hale*, 28 So. 3d at 783.

To meet the "otherwise delinquent" test, the plaintiff must prove the defendant or its employees took *affirmative* steps to create the condition. *Nelson*, 699 So. 2d at 1261; *see also Dunklin*, 595 So. 2d at 465. For example, in *Dunklin*, a plaintiff established that the defendant created the hazardous condition where the plaintiff submitted evidence that a clerk was handling vegetables with water on them in the produce section of the defendant's grocery and she fell on a wet spot in the produce section a few minutes later, despite the fact that the grocery store had a policy for employees to check the produce section every twenty minutes. *Id.*; *see also Rutledge v. Wings of Tuscaloosa, Inc.*, 848 So. 2d 1005, 1008 (Ala. Civ. App. 2002) (finding restaurant created a hazardous condition when it failed to follow its policy of keeping the kitchen floor covered with mats).

There is no evidence in the record that the wet condition of the entranceway floor was created through any affirmative actions taken by Defendant or its employees. While Ms. Lawson attempts to argue, based on a line of cases involving accumulations of rainwater, that Defendant should be held liable, such cases are inapplicable here. There is no evidence whatsoever that it was raining on the day of Ms. Lawson's fall.[3] (Lawson Dep. 22:13–20,

---

[3] The assertion made by Plaintiff's counsel that it was raining on the day of Ms. Lawson's fall, and that there was an excessive accumulation of water and sand on the floor of the entranceway that had been tracked in by other post office patrons (*see* Pl.'s Resp. in Opposition, at 2–3, Doc. #23) is not evidence and cannot create a genuine dispute of material fact. *See Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). ("Statements by counsel in briefs are not evidence."). In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the

Doc. #20-1; Nelson Decl. ¶ 2, Doc. #20-2.)

Even assuming that it was raining on July 21, 2011, there is no evidence in the record showing that there was an *unusual accumulation* of rainwater in the entranceway. Under Alabama law, such a showing is required to dispense with the plaintiff's notice requirement and impose a duty on the business owner to take affirmative measures like mopping and posting warnings. *See Terrell*, 364 So. 2d at 677 ("To require a storekeeper to keep a floor completely dry during a rainstorm or to hold him responsible for every slick place due to tracked-in rain water would impose an unreasonable standard of care and would, in effect, make him an insurer of the customer's safety."). Ms. Lawson testified that the floor was wet with something she guessed was water and that had sand on it. (Lawson Dep. 41:5–22.) She further stated that the liquid, though wet, was not "dripping wet." (Lawson Dep. 42:1–6.) Given this evidence, even if it was a rainy July day in Enterprise, Alabama, Ms. Lawson has made no showing that there was an unusual accumulation of rainwater in the entranceway such that Defendant had a duty to discover it, remove it, or warn customers about it.

## VI. CONCLUSION

The Court concludes that Ms. Lawson has failed to present more than a scintilla of evidence that Defendant had actual notice, constructive notice, or was otherwise delinquent in failing to discover and remove the foreign substance that allegedly caused her fall. Thus, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. #20) is GRANTED.

---

close of business on September 30, 1981.

Because this Opinion and Order resolves all claims in this action, the Clerk of Court is DIRECTED to close this file. A separate final judgment will be entered.

DONE this the 21st day of June, 2013.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE